[Cite as *In re J.N.*, 2019-Ohio-1800.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | |
|---|---|
| IN RE: J.N., M.N., I.N. | : |
| | : |
| | :     Appellate Case No. 28247 |
| | : |
| | :     Trial Court Case Nos. 2011-10072, |
| | :     2011-10075 and 2011-10076 |
| | : |
| | :     (Appeal from Common Pleas Court- |
| | :     Juvenile Division) |
| | : |

. . . . . . . . . . .

O P I N I O N

Rendered on the 10th day of May, 2019.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by SARAH E. HUTNIK, Atty. Reg. No. 0095900, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, Dayton, Ohio 45422
    Attorney for Appellee, Montgomery County Children Services

SARA M. BARRY, Atty. Reg. No. 0090909, 1139 Holly Avenue, Dayton, Ohio 45410
    Attorney for Appellant, Mother

. . . . . . . . . . . .

TUCKER, J.

**{¶ 1}** Mother appeals from a judgment of the juvenile court terminating her parental rights and awarding permanent custody of her children to Montgomery County Children Services (hereinafter "MCCS"). Mother contends that the court erred in concluding there was clear and convincing evidence to support a finding that the grant of permanent custody to MCCS was in the best interest of the children.

**{¶ 2}** We conclude that the juvenile court did not err by finding that granting permanent custody to MCCS was in the best interest of the minor children. The court's findings under R.C. 2151.414(D) were supported by competent, credible evidence. Accordingly, the judgment of the juvenile court is affirmed.

## I. Facts and Procedural History

**{¶ 3}** Mother's three minor children, J.N., M.N. and I.N., are the subject of this appeal; she has five children in total. J.N. was born in 2007. I.N. was born in 2008. M.N. was born in 2010.[1]

**{¶ 4}** MCCS became involved with this family in 2006 regarding Mother's eldest daughter, who was placed in the legal custody of a relative. MCCS became involved with the family again in September 2011, when Mother gave birth, at home, to another daughter.[2] When medics responded to the home, they observed the child was not

---

[1] The biological father of the three children was incarcerated from 2011 until 2013. He died from a drug overdose in 2014.

[2] The father of this child, Mother's fifth child, is not the father of the three children involved in this appeal.

responsive. After being transported to the hospital, Mother tested positive for benzodiazepines and cocaine, and the child tested positive for cocaine.[3]

{¶ 5} Subsequently, in November 2011, 16-month-old M.N. was found wandering outside the family home. MCCS caseworkers were called to the home and learned that Mother had been transported to the hospital with a blood alcohol content of .291. The caseworkers observed that the home was filled with trash and dirty dishes. The floor was littered with broken glass, soiled diapers, used razors, and used tampons, and medications were within reach of the children. There was no edible food in the home. The children had to undergo medical treatment because they were ill and had fevers.

{¶ 6} The children were removed from the home, and a dependency complaint was filed. The children were adjudicated dependent in February 2012. MCCS developed a case plan for reunification of Mother and the children. Mother completed her case plan, and the children were returned to her custody in August 2013.

{¶ 7} In June 2015, MCCS again became involved with the family when Mother was incarcerated on charges of felony child endangerment and domestic violence involving the children. Mother was convicted of the charges and was placed on community control. After investigating the matter, MCCS learned that Mother had also been convicted of misdemeanor child endangerment in March 2015, after she was arrested for driving under the influence while the children were in the vehicle.

{¶ 8} The children were again removed from the home, and temporary custody was granted to MCCS. M.N. was placed in the foster home where she had previously

---

[3] This child was subsequently adopted in Greene County and is no longer a party to this proceeding.

resided and which has remained her foster home throughout the proceedings. I.N. and J.N. were placed in a different foster home, but were subsequently placed with relatives. However, in November 2015, the boys were placed in their current foster home.

{¶ 9} MCCS developed a case plan for Mother, which included requirements that she maintain stable housing and employment, engage in visitation with the children, and engage in treatment and follow-up care for drug, alcohol and mental health issues.

{¶ 10} In June 2016, the juvenile court granted a first extension of temporary custody to MCCS. A second extension was granted in January 2017. MCCS filed a motion for permanent custody on April 20, 2017. A hearing was conducted on October 5, 2017. Following the hearing, the magistrate issued a decision granting permanent custody of the children to MCCS, and Mother filed objections. The juvenile court overruled Mother's objections and granted permanent custody to MCCS. Mother appeals.

## II.    Analysis

{¶ 11} Mother's sole assignment of error states as follows:

THE TRIAL COURT ERRED IN FINDING THERE WAS CLEAR AND CONVINCING EVIDENCE THAT PERMANENT CUSTODY TO MCCS IS IN THE BEST INTEREST OF THE CHILDREN.

{¶ 12} Mother contends that the record does not contain evidence to support the juvenile court's finding that granting permanent custody to MCCS was in the best interest of the children.

{¶ 13} A juvenile court is authorized to terminate parental rights and grant

permanent custody to the State upon a finding, by clear and convincing evidence, that permanent custody is in a child's best interest and that the child has been in the State's custody for at least 12 of the preceding 22 months.   R.C. 2151.414(B)(1)(d).

**{¶ 14}** Here, the record establishes that the children had been in temporary custody for more than 12 months of a consecutive 22 month period at the time that MCCS filed its motion for permanent custody.   Accordingly, the trial court only had to consider whether permanent custody was in their best interest.   *In re E.S.,* 2d Dist. Clark No. 2016-CA-36, 2017-Ohio-219, ¶ 20.

**{¶ 15}** Under R.C. 2151.414(D), the best interest of the child encompasses "all relevant factors," which include:

(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;

(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply

in relation to the parents and child.

{¶ 16} In evaluating these factors, the trial court found that the children were bonded to both their Mother and their foster families. The court further found that the children were adoptable. The magistrate conducted an in camera interview of the children, but concluded that they were "not fully capable of comprehending the nature of permanent custody." Dkt. 24. The boys expressed the wish to return to their Mother. M.N. was unsure about returning to Mother. The guardian ad litem (GAL) recommended that permanent custody be granted to MCCS.

{¶ 17} The evidence showed that M.N. was doing well in her foster home and had made progress in school while in the care of her foster parents. M.N. was also very bonded to the foster parents' daughter. Additionally, the foster parents had maintained contact with M.N.'s older and younger sisters, neither of whom were a part of this action, and kept them involved in M.N.'s life. Her foster parents wished to adopt her.

{¶ 18} The boys had also done well in their foster home. They both had been diagnosed with mental health issues, and the foster parents had enrolled them in ongoing treatment. While the boys' grades were below average, they had made progress in school while in the care of their foster parents. The foster parents had determined that they could adopt the boys, but they were willing to keep them until an adoptive home could be found. The evidence demonstrated that the boys had shown improvement while in a stable home.

{¶ 19} Regarding the custodial history, the court noted that the children had previously been removed from Mother's home and had been in the custody of MCCS for a period of almost two years. Further, the children had returned to and been in the

custody of MCCS for an additional period of more than two years at the time of the permanent custody hearing. At that point, J.N. was 12, I.N. was 11 and M.N. was 9. Thus, each child had spent a significant portion of his/her life in the temporary custody of MCCS.

{¶ 20} The court further found that the children's need for a legally secure permanent placement could not be achieved without granting permanent custody to MCCS. In support, the court noted that Mother had failed to adequately address her case plan in order to remedy her substance abuse and mental health issues.

{¶ 21} While the MCCS caseworker testified that Mother had made progress on her case plan, at the time the permanent custody hearing, she had not adequately addressed the issues that led to the removal of the children. Mother claimed to be living in a home that she rented from her friend, whom she identified simply as Anthony. The home was virtually empty and had no beds. Mother produced a lease signed by Anthony, even though Anthony did not appear to own the property. MCCS was unable to ascertain Mother's relationship with Anthony and whether Mother was residing with him. The case worker testified that Mother was not forthcoming about her relationship with Anthony even when asked why his name was tattooed across her chest.

{¶ 22} More importantly, while Mother did engage in a program for her substance abuse and mental health issues, she only sporadically attended the recommended aftercare program. In fact, she had not engaged in the aftercare program since January 2017, a period of eight months prior to the hearing. While Mother claims that there was no evidence presented that she still abused alcohol or drugs, we note that she admitted to a caseworker that she occasionally drinks. Further, MCCS had been involved with

Mother since 2006, and there was evidence that Mother has had an ongoing problem with substance abuse. Mother did not testify at the hearing to dispute the testimony of the caseworker and the GAL, who testified that her substance abuse and failure to engage in treatment had been an ongoing issue.

{¶ 23} Additionally, while Mother was consistent in visitation with the children, the GAL testified that during the visits there was very little interaction between Mother and the children and that Mother would generally just observe the children while they played. The caseworker corroborated this testimony.

{¶ 24} Finally, the juvenile court also found that R.C. 2151.414(E)(9) applied to this case. That section of the statute requires the court to consider whether a parent "has placed the child at substantial risk of harm two or more times due to alcohol or drug abuse and has rejected treatment two or more times or refused to participate in further treatment two or more times after a case plan issued pursuant to section 2151.412 of the Revised Code requiring treatment of the parent was journalized as part of a dispositional order issued with respect to the child or an order was issued by any other court requiring treatment of the parent." *Id.* As noted above, the children were left unattended in 2011 when Mother was transported to the hospital due to a significant blood alcohol level. M.N., who was 16 months old at the time, was found outside the home by a neighbor. Mother was also arrested in March 2015 for driving while intoxicated with the children in the car. She was convicted of misdemeanor child endangering. Also, in June 2015, she was arrested for, and subsequently convicted of, felony child endangering and domestic violence.

{¶ 25} "In a proceeding for the termination of parental rights, all of the court's

findings must be supported by clear and convincing evidence." *In re J.R.*, 2d Dist. Montgomery No. 21749, 2007-Ohio-186, ¶ 9, citing R.C. 2151.414(E). We conclude that this record contains competent, credible evidence to support the juvenile court's conclusion that awarding permanent custody to MCCS was in the best interest of the children. Accordingly, Mother's sole assignment of error is overruled.

### III.    Conclusion

**{¶ 26}** Mother's assignment of error being overruled, the judgment of the juvenile court is affirmed.

. . . . . . . . . . . .

DONOVAN, J. and FROELICH, J., concur.

Copies sent to:

Mathias H. Heck, Jr.
Sarah E. Hutnik
Sara M. Barry
Lauren Davenport
Courtney Price
Hon. Helen Wallace